WILLIAMS & WORKS, INC. v SPRINGFIELD CORPORATION

1. MECHANICS' LIENS—NOTICE—INTENT TO CLAIM LIEN—DEALING WITH OWNER—STATUTES.

Notice of intent to claim a mechanics' lien is not required where the lien claimant deals directly with the owner of the property subject to the lien; to permit an owner who has actual notice of a claim to defeat a lien on the basis that he did not receive statutory notice would be inconsistent with the purpose of the mechanics' lien act (MCLA 570.1 *et seq.;* MSA 26.281 *et seq.).*

2. MECHANICS' LIENS—LIBERAL CONSTRUCTION—ATTACHMENT OF LIEN—STATUTES.

The mechanics' lien act is to be construed liberally as to the determination of whether a lien has attached (MCLA 570.1 *et seq.;* MSA 26.281 *et seq.).*

3. MECHANICS' LIENS—NOTICE—DEALING WITH OWNER—STATUTES.

Mechanics' lienors dealt directly with the owner of the property subject to foreclosure and were thereby exempt from the requirement of serving upon the owner their statements of account and lien within 90 days of completing their work where the property was owned by a copartnership whose sole partners were an individual and a corporation wholly owned by that individual, and where all of the lienors' dealings were with that individual (MCLA 570.6; MSA 26.286).

4. MECHANICS' LIENS—SUBCONTRACTORS—OWNERS—STATUTES.

Parties claiming mechanics' liens were subcontractors, not origi-

REFERENCES FOR POINTS IN HEADNOTES
[1] 53 Am Jur 2d, Mechanics' Liens § 171.
[2] 53 Am Jur 2d, Mechanics' Liens § 23.
[3] 53 Am Jur 2d, Mechanics' Liens § 66.
[4] 53 Am Jur 2d, Mechanics' Liens § 67.
[5] 53 Am Jur 2d, Mechanics' Liens §§ 291, 400.
[6] 53 Am Jur 2d, Mechanics' Liens § 281.
[7] 16 Am Jur 2d, Constitutional Law §§ 119, 120.
[8] 53 Am Jur 2d, Mechanics' Liens § 26.
[9] 53 Am Jur 2d, Mechanics' Liens § 179.
[10] 53 Am Jur 2d, Mechanics' Liens §§ 11, 14.

nal contractors, for purposes of the mechanics' lien statute where a part owner of the property was also the general contractor on the construction project (MCLA 570.1 *et seq.;* MSA 26.281 *et seq.).*

5. Mᴇᴄʜᴀɴɪᴄꜱ' Lɪᴇɴꜱ—Eᴠɪᴅᴇɴᴄᴇ—Pᴀʀᴏʟ Eᴠɪᴅᴇɴᴄᴇ—Wᴀɪᴠᴇʀ ᴏꜰ Cʟᴀɪᴍ—Iɴᴛᴇɴᴛ ᴏꜰ Pᴀʀᴛɪᴇꜱ.

Parol evidence was properly admitted to determine the intent of the parties where the waivers of claim of mechanics' lien executed by subcontractors were ambiguous.

6. Mᴇᴄʜᴀɴɪᴄꜱ' Lɪᴇɴꜱ—Pʀɪᴏʀɪᴛʏ—Cᴏᴍᴍᴇɴᴄᴇᴍᴇɴᴛ ᴏꜰ Bᴜɪʟᴅɪɴɢ—Aᴄᴛᴜᴀʟ Cᴏɴꜱᴛʀᴜᴄᴛɪᴏɴ —Sᴛᴀᴛᴜᴛᴇꜱ.

A mechanics' lien has priority over all encumbrances recorded subsequent to the commencement of building; "commencement" does not mean actual construction, but includes engineering services prior to actual construction (MCLA 570.1, 570.9; MSA 26.281, 26.289).

7. Mᴇᴄʜᴀɴɪᴄꜱ' Lɪᴇɴꜱ—Cᴏɴꜱᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ—Sᴛᴀɴᴅɪɴɢ—Oᴡɴᴇʀꜱ—Mᴏʀᴛɢᴀɢᴇᴇꜱ.

The owner of real estate subject to a mechanics' lien has standing to raise the issue of the constitutionality of the mechanics' lien statute; a mortgagee of the real estate does not.

8. Mᴇᴄʜᴀɴɪᴄꜱ' Lɪᴇɴꜱ—Sᴛᴀᴛᴇ Aᴄᴛɪᴏɴ.

The placement of mechanics' liens upon property involves state action because mechanics' liens are created, regulated and enforced by the state.

9. Mᴇᴄʜᴀɴɪᴄꜱ' Lɪᴇɴꜱ—Pᴏꜱꜱᴇꜱꜱɪᴏɴ ᴏꜰ Pʀᴇᴍɪꜱᴇꜱ—Rɪɢʜᴛ ᴏꜰ Aʟɪᴇɴᴀᴛɪᴏɴ—Dᴇᴘʀɪᴠᴀᴛɪᴏɴ ᴏꜰ Pʀᴏᴘᴇʀᴛʏ Iɴᴛᴇʀᴇꜱᴛ.

A mechanics' lien, although it clouds title, does not disturb possession or right of alienation until after a foreclosure action; in effect, a lien is merely notice to others of the existence of a potential foreclosure action, and the filing of a mechanics' lien does not constitute a significant deprivation of a property interest.

10. Mᴇᴄʜᴀɴɪᴄꜱ' Lɪᴇɴꜱ—Cᴏɴꜱᴛɪᴛᴜᴛɪᴏɴᴀʟ Lᴀᴡ—Dᴜᴇ Pʀᴏᴄᴇꜱꜱ—Nᴏᴛɪᴄᴇ ᴏꜰ Lɪᴇɴꜱ.

Due process of law is a flexible concept not requiring any particular procedural requisites, and the mechanics' lien statute is not rendered unconstitutional for failure to provide for notice prior to filing of a lien or for a hearing prior to or immediately after filing of a lien.

Appeal from Genesee, Philip C. Elliott, J. Submitted December 8, 1977, at Lansing. (Docket Nos. 26617, 26618, 26619, 26625, 26626, 26628.) Decided February 22, 1978. Leave to appeal applied for.

Complaint by Williams & Works, Inc., against Springfield Corporation for foreclosure of a mechanics' lien, joining as defendants all parties with recorded interests in the property. Judgments of foreclosure were entered in favor of plaintiff and several other mechanics' lienors, and the mechanics' liens were held to be superior to a mortgage held by defendant Kelly Mortgage and Investment Company. Kelly Mortgage and Investment Company and Bristol Square Properties Group, the successor in title to Springfield Corporation, appeal. Affirmed.

*Russell, Ward, Hodgkins & Heaney,* for defendant Kelly Mortgage and Investment Company.

*Smith, Miro, Hirsch, Brody & Zweig,* (by *Martin C. Weisman),* for defendant Bristol Square Properties Group.

*Brownell, Andrews, Philpott & Piper,* for defendants Garno Brothers Heating and Cooling, Inc., PPG Industries, Inc., and Shank, Coupland & Long Company.

Before: R. B. BURNS, P. J., and ALLEN and R. M. MAHER, JJ.

R. B. BURNS, P. J. The trial court entered judgments of foreclosure against the owner of an apartment project, appellant Bristol Square Properties Group, in favor of mechanics' lienors and appellees Shank, Coupland & Long Co., PPG Industries, Inc., and Garno Brothers Heating and

Cooling, Inc., with priority over the mortgage held by appellant Kelly Mortgage and Investment Company. It is argued on appeal that appellees did not comply with the procedural requirements of the mechanics' lien act, MCLA 570.1 *et seq.;* MSA 26.281 *et seq.;* that they waived whatever liens they had; that the liens are not entitled to priority; that the act is unconstitutional; and that the award of attorneys fees was excessive. We affirm.

The property which is the subject of foreclosure underwent several changes of ownership during construction of the apartment complex. It was originally owned by Kelly Mortgage and Investment Company with LAW Development Co., Inc., with Springfield Corporation as an optionee. Springfield is a close corporation wholly owned by its president, Robert L. Foote, and was at all times the general contractor on the project. Springfield subcontracted engineering work to Williams & Works, Inc., which did the first work on the project in June, 1972. On January 4, 1973, Kelly Mortgage and LAW conveyed the property to Springfield, which in turn executed mortgages to City National Bank and Kelly Mortgage. City National Bank subsequently conveyed its mortgage to Kelly Mortgage. On December 27, 1973, Springfield conveyed the property to Bristol Square Properties Group, a limited copartnership in which Mr. Foote and Springfield Corporation are the sole general partners. Appellees are subcontractors who began supplying labor or materials while the project was owned by Springfield Corporation, and completed their work after Springfield conveyed to Bristol Square Properties Group. At all times they dealt with Mr. Foote. Williams & Works, Inc., brought suit to foreclose its mechanics' lien, joining as defendants all persons with recorded interests in

the property. See MCLA 570.10; MSA 26.290. The validity of the mechanics' lien of Williams & Works, Inc., is not before this Court.

Most of the issues raised on appeal concern the alleged failure of appellees to comply with the procedural requirements of obtaining a mechanics' lien. Appellees argue that the requirements were inapplicable or substantially complied with.

Appellants first argue that Garno Brothers Heating and Cooling, Inc. and PPG Industries, Inc. failed to provide Bristol Square Properties Group with written notice of their intent to claim liens within 90 days of first furnishing labor or materials. MCLA 570.1; MSA 26.281. However, the owner of the property at the time both appellees first started work or supplied materials was Springfield Corporation. Notice is not required where the lien claimants deal directly with the owner. *Wallich Lumber Co v Golds,* 375 Mich 323, 328–329; 134 NW2d 722 (1965), *Mielis v Everts,* 264 Mich 363, 364; 249 NW 875, 876 (1933), *J Altman Companies, Inc v Saginaw Plumbing & Heating Supply Co,* 42 Mich App 747, 753–754; 202 NW2d 707, 711 (1972). In *Burton Drywall, Inc v Kaufman,* 69 Mich App 85; 244 NW2d 367 (1976), *lv granted,* 399 Mich 875 (1977), a panel of this Court declined to follow the above cases, reasoning that *Mielis* was wrongly decided. Your author dissented because we are bound to follow Supreme Court precedent. In *P H I Construction Co v Riverview Commons Associates,* 80 Mich App 518; 264 NW2d 50 (1978), another panel declined to follow *Burton Drywall,* also explaining that it was bound by Supreme Court precedent, and observing that it would be inconsistent with the purpose of the act to permit an owner who has actual notice of the claim to defeat a lien on the basis that he did not receive statu-

tory notice. The decision of the Supreme Court in *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich 184; 253 NW2d 646 (1977), that the act is to be construed liberally as to the determination of whether a lien has attached strengthens the *P H I Construction Co* analysis, since a basic premise of the *Burton Drywall* decision was that the act must be construed strictly until the lien has attached. We therefore follow *Mielis* and *Wallich* and hold that notice of intent to claim a lien was unnecessary. The fact that ownership of the property changed within the 90-day period within which PPG Industries, Inc., was to provide notice cannot be the basis for defeating the lien, particularly where both of the general partners in Bristol Square Properties Group were themselves dealing directly with appellee. See *Williams & Works, Inc v Springfield Corp,* 76 Mich App 541, 549; 257 NW2d 160, 164 (1977).

All of the appellees filed their statements of account and lien within 90 days of completing their work. MCLA 570.5; MSA 26.285. However, appellants argue that all appellees failed to properly serve the statements upon the owner, Bristol Square Properties Group. MCLA 570.6; MSA 26.286. The service statute specifically exempts those persons dealing directly with the owner or part owner of the premises. MCLA 570.6; MSA 26.286. Since appellees were dealing directly with Mr. Foote, they were as a practical matter dealing directly also with Springfield Corporation and Bristol Square Properties Group. To fail to hold that appellees were dealing directly with the owner, Bristol Square Properties Group, or the part owners, Mr. Foote and Springfield Corporation, would be to elevate form over substance so as

to defeat the purpose of the statute. MCLA 570.27; MSA 26.307; *Williams & Works, Inc v Springfield Corp, supra.*

Appellants next argue that if Springfield Corporation and Bristol Square Properties Group are to be treated as the same entity for the purpose of notice, then Springfield Corporation should be treated as the owner under MCLA 570.4; MSA 26.284. This statute provides that an original contractor who desires to draw money from an owner must give the owner a statement under oath listing his subcontractors and the amounts due them. It is appellants' theory that, if Springfield Corporation is treated as the owner, then appellees are original contractors. This however ignores the fact that Springfield Corporation was wearing two hats throughout much of the construction, as owner and general contractor. Appellees were subcontractors of Springfield Corporation, general contractor. As such they were not original contractors and MCLA 570.4; MSA 26.284 is inapplicable.

During the course of construction Shank, Coupland & Long Co. and Garno Brothers Heating and Cooling, Inc., executed waiver forms supplied by Burton Abstract & Title Company, disbursement agent for Kelly Mortgage and Investment Company, whenever they received partial payment. These forms provided that appellees waived any claims of lien which they "now have or may have hereafter * * * ".

"Before one entitled to a lien under the statute should be declared to have waived it, it ought clearly and unequivocally to appear that he has expressly waived it." *Saginaw Lumber Co v Wilkinson,* 266 Mich 661, 665; 254 NW 240, 242 (1934), see *Williams & Works, Inc v Springfield Corp, supra.*

The waiver form was ambiguous,[1] and parol evidence was properly admitted to determine the intent of the parties. See, *e.g.*, *In re Landwehr's Estate,* 286 Mich 698, 703; 282 NW 873, 875 (1938). The trial court's determination that the parties understood the payment and waiver procedure to waive any right to a lien only on work already completed is amply supported by the record. GCR 1963, 517.1. These liens were not waived.

It is next argued that the mortgages held by Kelly Mortgage and Investment Company have priority over the mechanics' liens held by appellees. MCLA 570.9; MSA 26.289 provides that mechanics' liens have priority over all encumbrances recorded subsequent to the "commencement" of building. Appellants argue that "commencement" means actual construction, and actual construction did not start until after Kelly Mortgage and City National Bank had recorded their mortgages. We cannot accept appellants' interpretation. Included within the act are engineering services. MCLA 570.1; MSA 26.281. Unless "commencement" means when engineering services are first performed, engineering firms will not be protected and receive all of the benefits of the act. The act must be liberally construed to carry out its intended purpose of benefiting subcontractors. MCLA 570.27; MSA 26.307; *Spartan Asphalt Paving Co v Grand Ledge Mobile Home Park,* 400 Mich at 188; 253 NW2d at 649. See *Bankers Trust*

---

[1] At the time at which each claimant signed waivers, it could be said that the claimant already had a right of lien for the work done, or it could be said the lien claimant had no right to a lien until he thereafter complied with the procedural requirements of the act. Under the former view, the right of lien which the claimant "may have hereafter" would refer to a lien for work subsequently done, whereas under the latter view, it would refer to a lien for work already done but for which the procedural requirements had not been met.

*Co v El Paso Pre-Cast Co,* — Colo —; 560 P2d 457, 460–461 (1977). Williams & Works, Inc. commenced work prior to the recording of the mortgages. Appellees' liens are therefore entitled to priority over the mortgages. MCLA 570.9; MSA 26.289; see *Kay v Towsley,* 113 Mich 281, 283; 71 NW 490, 491 (1897).

Appellants contend that the mechanics' lien act is repugnant to the due process clauses of US Const, Am XIV and Const 1963, art 1, § 17[2] for failure to provide for notice prior to filing of a lien and for a hearing prior to or immediately after filing of a lien. See *North Georgia Finishing, Inc v Di-Chem, Inc,* 419 US 601; 95 S Ct 719; 42 L Ed 2d 751 (1975), *Mitchell v W T Grant Co,* 416 US 600; 94 S Ct 1895; 40 L Ed 2d 406 (1974), *Fuentes v Shevin,* 407 US 67; 92 S Ct 1983; 32 L Ed 2d 556 (1972), *Sniadach v Family Finance Corp,* 395 US 337; 89 S Ct 1820; 23 L Ed 2d 349 (1969). We conclude that the mechanics' lien act is constitutional.

We must preliminarily dispose of two sub-issues. First, we find that Bristol Square Properties Group, as owner of the premises, has standing to raise this issue, although Kelly Mortgage and Investment Company, as mortgagee, does not. See *Williams & Works, Inc v Springfield Corp, supra* at 546–548; 257 NW2d at 163. Second, we find that placement of mechanics' liens upon the premises involved state action, because mechanics' liens are created, regulated, and enforced by the state. *Barry Properties, Inc v The Fick Brothers Roofing Co,* 227 Md 15; 353 A2d 222 (1976), *Connolly Development, Inc v Superior Court of Merced County,* 17 Cal 3d 803; 553 P2d 637; 132 Cal Rptr

---

[2] For purposes of analysis, we assume the due process protections of Const 1963, art 1, § 17 are equivalent to those of US Const, Am XIV. *See Dow v State of Michigan,* 396 Mich 192; 240 NW2d 450 (1976).

477 (1976), *appeal dismissed,* 429 US 1056; 97 S Ct 778; 50 L Ed 2d 773 (1977).

The United States Supreme Court summarily affirmed a decision by a three-judge district court that held the Arizona mechanics' lien act did not deprive a property owner of a significant property interest without due process of law. *Spielman-Fond Inc v Hanson's, Inc,* 417 US 901; 94 S Ct 2596; 41 L Ed 2d 208 (1974), *affirming* 379 F Supp 997 (D Ariz, 1973). Although a summary affirmance cannot necessarily be read as an affirmance of the reasoning of the lower court, it is nonetheless a resolution on the merits of the issues presented to the Supreme Court and is consequently precedent binding upon lower courts. See *Edelman v Jordan,* 415 US 651, 670–671; 94 S Ct 1347, 1359–1360; 39 L Ed 2d 662, 677 (1974), *Fusari v Steinberg,* 419 US 379, 391–392; 95 S Ct 533, 541; 42 L Ed 2d 521, 530–531 (1975) (Burger, C. J., concurring), *B & P Development v Walker,* 420 F Supp 704 (WD Penn, 1976). *Roundhouse Construction Corp v Telesco Masons Supplies Co, Inc,* 168 Conn 371; 362 A2d 778 (1975), *vacated and remanded,* 423 US 809; 96 S Ct 20; 46 L Ed 2d 29 (1975), *reaffirmed,* 170 Conn 155; 365 A2d 393 (1976), *cert den,* 429 US 889; 97 S Ct 246; 50 L Ed 2d 172 (1976), one of two cases which have held states' mechanics' lien acts unconstitutional, did so because it deduced a standard of due process from *Sniadach, Fuentes, Mitchell* and *North Georgia Finishing, Inc,* and found that its state's act did not meet that standard. Its analysis failed to recognize the precedential significance of *Spielman-Fond.* We need not attempt to derive a standard of due process applicable to mechanics' lien acts from Supreme Court cases dealing with other creditor's remedies if *Spielman-Fond* is directly on point. Because a summary

affirmance does not explicate the reasons for affirmance, our task is to look to the opinion of the lower court and the opinions of other courts which have examined the constitutionality of various states' mechanics' lien acts in order to determine the possible reasons for affirmance, and then to determine whether those reasons apply to the instant case. *Cf., B & P Development v Walker, supra, In re Thomas A Cary, Inc,* 412 F Supp 667 (ED Va, 1976), *Barry Properties v Fick Brothers Roofing Co, supra.* There have been a sufficient number of such opinions that the issues are clearly drawn. We deduce that there can be but two possible reasons for the affirmance in *Spielman-Fond.*

The first reason is that advanced by the lower court in *Spielman-Fond.* Unless filing a mechanics' lien constitutes a taking of a significant property interest, the procedural requisites announced by the Supreme Court in *Sniadach, Fuentes, Mitchell* and *North Georgia Finishing, Inc* are inapplicable. Although a mechanics' lien clouds title, no disturbance of possession or right of alienation occurs until after a foreclosure action, and the inconvenience of the lien can be ameliorated by bonding. 379 F Supp at 999, accord, *In re Thomas A Cary, Inc, supra, Ruocco v Brinker,* 380 F Supp 432 (SD Fla, 1974), *Cook v Carlson,* 364 F Supp 24 (D SD, 1973), *Bankers Trust Co v El Paso Pre-Cast Co,* — Colo —; 560 P2d 457 (1977), *Tucker Door & Trim Corp v Fifteenth Street Co,* 235 Ga 727; 221 SE2d 433 (1975), *Carl A Morse, Inc v Rentar Industrial Development Corp,* 56 App Div 2d 30; 391 NYS2d 425 (1977), *Silverman v Gossett,* 553 SW2d 581 (Tenn, 1977). Theoretically, the amount of the lien is equivalent to the increase in value of the structure due to the work done, so that there is no

actual deprivation overall. *Cook v Carlson, supra, Carl A Morse, Inc v Rentar Industrial Development Corp, supra.* In effect, a lien is merely notice to others of the existence of a potential foreclosure action, analogous to a notice of *lis pendens. Tucker Door & Trim Corp v Fifteenth Street Co, supra.*

It is the majority view that no significant deprivation occurs upon filing a mechanics' lien, and this may have been the basis for the Supreme Court's affirmance in *Spielman-Fond.* But see *Connolly Development, Inc v Superior Court of Merced County, supra, Barry Properties v Fick Brothers Roofing Co, supra.* If so, this rationale would compel affirmance in the instant case.

Assuming that a significant deprivation had occurred, the second possible reason for the affirmance is that the mechanics' lien statute provided sufficient procedural requisites to pass constitutional muster. Due process is a flexible concept not requiring any particular procedural requisites. *Dow v State of Michigan,* 396 Mich 192, 204–205; 240 NW2d 450, 456 (1976). It may be argued that the taking, while significant, is relatively minor compared to the countervailing interests of mechanics' lienors, and that the procedural requisites in *Spielman-Fond* were adequate. See *Ruocco v Brinker, supra, Cook v Carlson, supra, Connolly Development, Inc v Superior Court of Merced County, supra, Silverman v Gossett, supra.* Although this reasoning is subject to attack, primarily because of the absence of the hearing prior to or soon after imposition of a lien that *Fuentes, Mitchell* and *North Georgia Finishing, Inc,* appear to require, see *Connolly Development, Inc v Superior Court of Merced County, supra,* (Richardson, J., dissenting), *Roundhouse Construction Corp v Telesco Masons Supplies Co, Inc, supra,* those Su-

preme Court cases are sufficiently inconsistent as to render this rationale for affirmance a substantial likelihood. *Barry Properties v Fick Brothers Roofing Co, supra,* the second of the two cases which have held mechanics' lien acts unconstitutional, did so because its act did not contain procedural requisites as rigorous as those contained in the *Spielman-Fond* act. Using a similar analysis, the Court in *Connolly Development, Inc v Superior Court of Merced County, supra,* found the California act substantially similar to the Arizona act, and therefore constitutional. Accord, *B & P Development v Walker, supra.* Because the Michigan act is substantially similar to the Arizona act, we find *Spielman-Fond* to be controlling precedent for affirmance in the instant case. See *Connolly Development, Inc, supra, B & P Development v Walker, supra.*

Finally, appellants argue that the award of attorney fees was excessive. The award of attorney fees was within the trial court's discretion, MCLA 570.12; MSA 26.292, and we detect no abuse of discretion.

Affirmed.